May it please the Court, I'm Mark Zilbersmith for Petitioner Edward Williams, and I would like to reserve two minutes for rebuttal. In light of the Swirthaupt decision, I would like to focus on the ex post facto violation. And I believe in this case, Petitioner Williams has demonstrated a very clear ex post facto violation by showing that the power granted to the governor after his crime has in its practical implementation resulted in a longer period of incarceration and parole. By showing, quote, with assurance that he would have been granted parole had the law not been changed after his crime to allow a governor to overrule a board setting for a release date based upon its disagreement with superior court orders that were binding on the board. How can you show that with certainty, though? There's nothing uncertain about it. The board said we agree with some of Judge Armstrong, and we disagree with some of Judge Armstrong. Yes. But, I mean, it's almost like the, I think it's Dobbert, D-O-B-B-E-R-T versus Florida. You know, they said, well, we agree with some of what he said, we disagree with some of what he said. Well, of course, we know the governor is going to be the final arbiter, so we'll just send it on to him, let him handle it, basically. Isn't that what they did? No, I would respectfully disagree with Your Honor. It's not like Dobbert, because in this case the board said we're constrained by the superior court's findings to not make, to not invent findings and fabricate sham reasons like we have been doing in the past. And because we can't invent findings and fabricate sham reasons, we have to set a release date. So there's no question that they felt that they were bound to set a release date. Is that a direct quote of what the board said? That is my personal opinion, of course. But that's what they did for five years. They invented sham reasons, and they fabricated facts that were not borne out by the record. And I went up to the court of appeal, and I went to the superior court, and they said stop doing this, and do this according to the law and according with our findings. And the board said, well, given the superior court's ordinance and findings, we have no choice. We have to set a release date. And if the governor was bound by those same orders, he would have been out. And the governor said, I'm not bound by that. I have a power that I didn't have at the time of the crime to do my own decision based on my own findings, and I'm not bound by court orders, and that is a classic ex post facto violation that may not have been apparent to the Johnson court by the terms of the statute, but in its practical implementation, clearly violated the ex post facto clause of the United States Constitution and clearly resulted in Mr. Williams spending an additional two years in prison and an additional two years on parole. But does that sort out Swarthout versus Cook? It says the only process of petitioners seeking review of a parole denial is due under the federal due process clause. There's an opportunity to be heard in a statement of the reasons why the parole was denied. That's a due process ruling. It's not an ex post facto. If the state implemented a new scheme for the governor and said, you can decide parole based on the same factors at the board, but if you decide that one of the prisoner's roots for a team, that's outside of our great state of California, you can also use that as a factor in denying parole, and if the governor used that on a particular prisoner, that would violate the ex post facto clause. All right, so here's the problem I'm having with your argument. If this were direct review, I think I would have much sympathy for your argument because it does ‑‑ I mean, with certainty is a very high standard, but here we know what they, in fact, did. They didn't like it, but they did grant him parole. However, we're reviewing this under AEDPA, and so don't we have to ask ourselves whether the state court's decision, finding that it wasn't an ex post facto violation, was contrary to or an erroneous application of established federal law? Well, you do and you don't. Well, that's not a very ‑‑ give me one answer. Well, AEDPA applies. We have to apply AEDPA, okay. AEDPA applies, but they gave you a summary decision, so you have less deference than you would normally do. Well, didn't they cite NRA resin grants? They cited it, but they didn't cite any reason for denying. Now under, I think it's Richter or Cullen v. Pinholster, we have to find if there's any valid legal basis for their finding for this decision, we have to deal with that one. Yeah, but there's nothing. Well, it could be that they didn't believe it was an ex post facto violation because they didn't think that in the absence of the governor that the board would have rolled the way it did. The argument that Judge Mayen was making. But how can you find that? So you're saying it's an erroneous application to the facts. Yes, and a clearly unreasonable interpretation of established federal law. I mean, the board said we have no choice. If they have no choice, they're not doing this because they think the governor might reverse it in the way that Daubert abandoned its apparent recommendation for leniency or death. They're doing it because they felt constrained by the court. And that's what the system of California does say, is that if you're able to get the court to go and order the board to give a new hearing in conformance with its findings, the board has to do that. But what the state is saying is the governor doesn't have to do that, and that is a new power that was added after the crime in this case. It's a textbook example of an ex post facto violation, and I would win 9-0 in the U.S. Supreme Court on this. Do you have any case on point that says it's a textbook violation? Yes, because they added a new power. The governor added a new power. The state added a new power to the governor to ignore the court orders. Judge Wardlaw's question was, do you have a case that supports your position? Well, they all do. Everyone says that if the governor has a new power. Erie Railroad v. Tompkins or all the cases? Morales and Daubert and Garner v. Jones says the practical implication, if it lengthens the defendant's sentence. Lynch v. Mathis, they all do. And this Court's own ruling in Nelf v. Fats found that it's practical implication. Weaver v. Graham supports it. Weaver v. Graham had a new scheme that added ways that you could gain credits in prison and took away some automatic prison credits. And the Court said, you know, this may benefit some prisoners, but as to ‑‑ I'm not sure if it was Weaver or Mr. Graham. It took away automatic credits that he would have earned. And as to him, it violated his ex post facto rights. And that's what happened to Mr. Williams. He went in. He won in front of the board, a board that was reluctant to grant him a release date and did so only under compulsion of the Court's findings. And then the governor took it away using a new power that he didn't used to have that allowed him to use arbitrary reasons and disregard court orders. And this is a new power that he didn't have at the time of the crime. You're eating into your rebuttal time. It's a new power that he didn't have at the time of the crime. Did he have it? When did the governor get that power? When was the initiative passed? Was it after he was sentenced? After the sentencing? After Williams was sentenced. Was it after the parole board's decision? It was not after the parole board's decision. It was after the crime. And I'm sorry, I don't know if it was after Mr. Williams' sentencing. His sentencing was delayed because he was out on bail for several years, performing flawlessly. And what he did was a pretrial. In the context of this, I'm trying to buy your argument that this lengthened his sentence when it was enacted because it took the power from the parole board. I think the sequence, the timeline is important here. Well, the key issue in an ex post facto violation of this moment is crime. And this happened, the governor's power was added after the crime. Okay. And the governor used his power to extend my client's sentence after the 2005 parole board hearing. All right. All right, counsel, you're using up all your rebuttal time. Oh, thank you. May it please the Court, Deputy Attorney General Nick Hill Cooper for Respondent Napoli. Before responding to the substance of Petitioner's claims, I would just like to briefly raise two procedural issues. The first is following this Court's decision in Hayward, this case needs a certificate of appealability to proceed, and none has issued as of yet. But assuming that, the Court should issue one to respond to it. The second procedural issue is that the case is moot. In 2007, Williams was released to parole and received the full remedy available. He's not entitled to credit towards his parole term, as he claims. And for that reason, as a matter of procedure, this entire matter is moot. Moving on to the actual substance. As far as that, though, in McQuillan v. Duncan, isn't that on point, saying it's not moot? After McQuillan, this Court in Hayward v. Curry issued its decision in Hayward v. Curry. But in that case, they said when it comes to remedying a matter of state parole, federal courts look to state law for the remedy. And as a matter of state law, the petitioner is not entitled to credit against the parole term, and the cases on point are Inouye Bush and Inouye Chowdhury. And that's a more recent case, the Hayward case. And moving on to the actual ex post facto claim that the petitioner makes here, the analysis is a lot more rigorous than just whether he was incarcerated for two years as a result of the governor's decision. In Morales and Garner, the Supreme Court laid out a process of analysis which requires that the courts look to the actual change in the law, the actual structural change in the law. The governor's power does not increase during his life sentence. The governor's power does not change the standards by which suitability is measured. The governor's power is an exercise in discretion. And as this Court held in Johnson, a simple exercise in discretion or a change in the decision maker does not result in an ex post facto violation. I'm happy to answer any questions. Is the fact that Mr. Horton, the victim in this case, is a former policeman, did that have any effect on any of this? I don't know, Your Honor. So we know, though, as a political matter, by adding this, quote, extra layer of review and giving the power to the governor, what has resulted is instead of the power residing with the parole board, it now resides with an elected official who has every motivation never to issue parole, which I think, in fact, an affirmative parole decision, I'm trying to remember if a governor since this act was enacted has ever granted parole or affirmed. And I think a good example of that is this petitioner. Williams was denied parole or has parole reversed by the governor in the first decision. The second time the governor examined the issue, he took no action. He was released. So, yes, one could say that under Garner we have to look at the actual practical workings of the law as applied to this petitioner. But even as applied to this petitioner, he was effectively released under when the governor took no action. So even in this case, it cannot be said that the law resulted in a substantial increase in the likelihood that he would be incarcerated. You're saying the second time he was? The second time the issue came before the governor, the governor took no action, and Williams was released in 2007 to a five-year parole term in which he discharges next week. Which governor was it? Was it still Schwarzenegger? In 2007, Schwarzenegger was. Okay. And so for that reason, there's no ex post facto violation here. All right. Unless there's any questions. I'll submit. Thank you. If I may briefly have you to reply. Yes. The question that Your Honor, Judge Wardlaw, just asked, the problem is not that the governor has never allowed a board decision granting parole to take effect. Obviously, Mr. Williams was released. He's here in court today. But the question is, has the governor ever used the supposedly neutral power, which the court in Johnson said allowed him or her to reverse a denial of parole? No. What has happened in its practical implementation is that 99% of the time, the governor uses his power to overturn parole, and 1% of the time the governor allows the parole decision to go forward. I think it's become better since Governor Jerry Brown took office. It has, but you have to realize that all these people are the model inmates who should have been released under Governor Wilson in the 1990s, and then Governor Wilson had a no parole policy, and Governor Davis had a no parole policy, and Governor Schwarzenegger had an almost no parole policy. And now those people, you know, 15 years later, when they were recommended for release, you know, in the early 90s, are now getting out. That is absolutely true. Let me ask you, if you were to prevail, what relief are you seeking? I'm seeking the same relief that Your Honor granted Mr. McQuillian, which is to order his immediate discharge from parole. At this point, that's all I can get. He's out, he's been doing really well, but he's still on parole, and that's because the governor illegally, and in violation of ex post facto principles in the Constitution, reversed the parole. How much longer is his parole? Six months, right? One more year. Is it a whole year? Yes. I thought it was April of next year. April might have been the date of the initial release decision, but it didn't become final, and he wasn't released until October 2007. All right. Actually, I think the release decision was in June, and it takes 90 days, and then the governor has 30 days. But he was released, it was yesterday, was his anniversary. All right. Well, thank you very much, counsel. Thank you, Your Honor. Thank you, Judge Blumen. Thank you. Williams v. Schwarzenegger is submitted.
judges: Mahan, Leavy, Wardlaw